1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   MARION MARC PRYOR,               )      NO. CV 17-7566-DSF (AGR)

12              Plaintiff,            )
                                      )
13                  v.                )      ORDER OF DISMISSAL
                                      )
14   LOS ANGELES COUNTY               )
15   DISTRICT ATTORNEY'S OFFICE,      )
                                      )
16              Defendant.            )
                                      )
17   _____)

18                                    I.

19                              **BACKGROUND**

20          On October 16, 2017, Plaintiff, a pro se state inmate, filed a civil rights

21   complaint.  On November 14, 2017, the Court dismissed the complaint with leave

22   to amend.  On February 9, 2018, Plaintiff filed the First Amended Complaint

23   ("FAC").

24          Pursuant to the Prison Litigation Reform Act, the Court has screened the

25   FAC to determine whether it fails to state a claim on which relief may be granted.

26   28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c)(1).

27

28

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citations omitted).

A pro se complaint is to be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Before dismissing a pro se civil rights complaint for failure to state a claim, the plaintiff should be given a statement of the complaint's deficiencies and an opportunity to cure them unless it is clear the deficiencies cannot be cured by amendment. *Eldridge v. Block*, 832 F.2d 1132, 1135-36 (9th Cir. 1987).

## II.

## PLAINTIFF'S STATE-COURT EFFORTS
## TO OBTAIN POSTCONVICTION DISCOVERY

This is the second civil rights action filed by Plaintiff on the same subject. He again seeks relief from this court in the wake of his unsuccessful efforts to obtain postconviction discovery in the state courts. *See Pryor v. Los Angeles County District Attorney's Office*, CV 17-0633-DSF (AGR) ("*Pryor I*"). In that case, the Court denied the request to proceed without prepayment of filing fees and dismissed the action for lack of jurisdiction. (Dkt. No. 7 in *Pryor I*.)

According to a hearing transcript attached to the initial complaint, Plaintiff was sentenced to life without the possibility of parole after a conviction in 1988 based on a murder committed in June 1986 in Los Angeles County Superior Court Case No. A915615. (Dkt. No. 1 at 27-28, 33 (Exh. H), 51, 53 (Exh. J).) On December 28, 1989, the California Court of Appeal affirmed the judgment with

sentence modifications.  (Case No. B036280.)

In May 2012, Plaintiff apparently sent a California Public Records Act request to the Los Angeles County District Attorney's Office.  (Compl. at 2, 10 (Exh. B).)  Plaintiff does not disclose what he requested.  The response stated that, to receive the 2,865 pages, Plaintiff had to pay the costs and fees pursuant to Cal. Gov't Code § 6253(b).  Alternatively, Plaintiff could confer with his counsel to determine whether he was entitled to post-conviction discovery pursuant to Cal. Penal Code § 1054.9.  (*Id.* at 10.)

Plaintiff subsequently filed a request for post-conviction discovery pursuant to Cal. Penal Code § 1054.9.  On April 13, 2016, pursuant to direction from the California Supreme Court, the California Court of Appeal issued an alternative writ that required the Los Angeles County Superior Court in Case No. A915615 to conduct a full hearing pursuant to Cal. Penal Code § 1054.9 and *Rubio v. Superior Court*, 244 Cal. App. 4th 459 (2016), or else show cause why a peremptory writ of mandate should not issue.  (Dkt. No. 1 at 21-22 (Exh. F).)

On July 13, 2016, the Superior Court conducted a hearing after appointing counsel for Plaintiff.  At the hearing, Plaintiff's counsel read into the record the nine categories of items requested by Plaintiff.  Counsel for Plaintiff and the District Attorney's Office discussed the disposition of each category.  (*Id.* at 26-36 (Exh. H).)  The court set a further hearing on September 7, 2016 to address open issues.  (*Id.* at 40.)  On September 7, 2016, the Superior Court issued an order that is not attached to the complaint.  (*Id.* at 57 n.4 (Exh. K).)

According to the California Court of Appeal's online docket in Case No. B269919, the petition was dismissed as moot on October 13, 2016 after receipt of a Superior Court order dated September 28, 2016.

On November 3, 2016, Plaintiff filed a petition for review in the California Supreme Court in Case No. S238192.  The Court requested an answer.  On December 8, 2016, Plaintiff's counsel signed an acknowledgment of receipt of

evidentiary materials from the District Attorney's file in the categories discussed at the hearing. (Dkt. No. 1 at 44-49 (Exh. I).) On December 13, 2016, the People filed an answer. On December 27, 2016, Plaintiff filed a reply. On January 11, 2017, the California Supreme Court denied the petition for review. *Pryor v. Superior Court*, 2017 Cal. LEXIS 307 (2017).

In the meantime, on August 22, 2016, Plaintiff apparently filed a motion for protective order pursuant to Cal. Penal Code § 1054.7/1054.6 and a motion for post-conviction DNA testing and appointment of an independent serologist expert in Superior Court Case No. A915616. (Dkt. No. 1 at 55-56 (Exh. K).) On November 28, 2016, the People served a response that opposed appointment of an independent serologist expert on the grounds that the biological evidence had not been shown to exist based on the July 12, 2016 hearing and requested an extension of time to file an opposition to Plaintiff's motion for DNA testing. (*Id.* at 58-60.) Plaintiff does not attach the Superior Court's rulings on his motions.

On January 26, 2017, Plaintiff filed the complaint in *Pryor I* in this court. He requested the same relief sought in this action. (*Pryor I*, Compl. at 6.) On February 7, 2017, the Court ordered Plaintiff to show cause why the court should not dismiss the action without prejudice for lack of jurisdiction. Plaintiff responded on March 9, 2017. He conceded that his claims relating to the still-ongoing state court proceedings were barred by the doctrine of *Younger v. Harris*, 401 U.S. 37, 45 (1971). However, he argued that the *Rooker-Feldman* doctrine, discussed further below, did not bar review of his claims regarding state court proceedings that had concluded. On May 10, 2017, the Court denied his request to proceed in forma pauperis and dismissed *Pryor I* without prejudice for lack of jurisdiction.

According to California's Appellate Court Case Information database, on June 9, 2017, Petitioner filed a notice of appeal of the Superior Court's "denial of motion [for] dna testing post judgment." On July 21, 2017, the California Court of Appeal dismissed the appeal in case number B283810. On August 22, 2017,

4

Plaintiff filed a petition for review. On September 27, 2017, the California Supreme Court denied the petition for review. (Dkt. No. 1 at 8 (Exh. A).)

On October 16, 2017, Plaintiff filed a complaint and an application to proceed in forma pauperis. The complaint contains one claim that Defendant failed to produce discoverable materials to which Plaintiff was entitled in postconviction proceedings in state court. (Compl. at 2, 6.) Plaintiff seeks injunctive and declaratory relief that (1) Defendant properly disclose all evidence in its possession during postconviction proceedings; (2) Defendant produce the 2,865 pages in Plaintiff's Public Records Act request; (3) Defendant produce the missing 134 pages that Plaintiff paid in response to Defendant's estimate of costs dated March 9, 2016; (4) Defendant provide an accounting of the dates of destruction of physical evidence; and (5) Plaintiff is granted full access to blood swatches for DNA testing and appointment of an independent forensic expert. (Dkt. No. 1 at 6.)

On November 14, 2017, the Court dismissed the complaint with leave to amend. On February 9, 2018, Plaintiff filed the FAC.

### III.

### **THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM**

To state a violation of 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States by a defendant acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. *Rooker-Feldman* Doctrine

As the Court explained in its prior dismissal order and in *Pryor I*, Plaintiff's claim is not cognizable pursuant to the *Rooker-Feldman* doctrine to the extent Plaintiff contends the state courts erred in rejecting his claims for postconviction discovery. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *see also Exxon Mobil Corp. v. Saudi Basic Industries, Inc.*, 544 U.S. 280, 284 (2005) (*Rooker-*

*Feldman* doctrine applies to bar "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"); *compare Morrison v. Peterson*, 809 F.3d 1059, 1070 (9th Cir. 2015) ("Because Morrison does not seek an order that he be allowed DNA testing, but instead seeks to invalidate the DNA testing statute on federal constitutional grounds, his claim is not barred by *Rooker-Feldman*.").

The *Rooker-Feldman* doctrine "bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal [from a state court judgment], but also over the 'de facto equivalent' of such an appeal." *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012). To determine whether a claim constitutes a de facto appeal, a court examines whether "'the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" *Id.* at 779 (citation omitted). "Thus, we have found claims inextricably intertwined where '"the relief requested in the federal action would effectively reverse the state court decision or void its ruling."'" *Id.* (citation omitted).

## B. Due Process

The Supreme Court has held that a prisoner can bring a postconviction claim for DNA testing under § 1983 on the "slim" ground "that the governing state law denies him procedural due process." *Skinner v. Switzer*, 562 U.S. 521, 525 (2011) (holding that *District Attorney's Office v. Osborne*, 557 U.S. 52, 72 (2009) rejected application of substantive due process to this area).[1]

Procedural due process "is not an end in itself, so a necessary premise of this argument is that he has an entitlement (what our precedents call a 'liberty interest') to prove his innocence even after a fair trial has proved otherwise." *Osborne*, 557 U.S. at 67; *Id.* at 72-75 (rejecting freestanding right to DNA

---

[1] The Court held that the *Rooker-Feldman* doctrine did not bar such a claim. *Skinner*, 562 at 531-33.

evidence "untethered from the liberty interests he hopes to vindicate"); *Morrison*, 809 F.3d at 1065 (same). A prisoner has "a liberty interest in demonstrating his innocence with new evidence under state law." *Osborne*, 557 U.S. at 68; *Morrison*, 809 F.3d at 1065 (noting California did not dispute existence of liberty interest as in *Osborne*).

However, "'when a State chooses to offer help to those seeking relief from convictions,' due process does not 'dictat[e] the exact form such assistance must assume.'" *Osborne*, 557 U.S. at 69 (citation omitted). "Federal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive right provided." *Id.* (analyzing Alaska's procedures). The question is whether the state's procedure "'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgresses any recognized principle of fundamental fairness in operation.'" *Id.* (citation omitted); *Morrison*, 809 F.3d at 1065; *see also Skinner*, 562 U.S. at 530 (noting plaintiff's procedural due process claim did not challenge prosecutor's conduct or state court's decision).

In the prior order dismissing the complaint with leave to amend, the Court explained that the complaint did not contain any allegations from which a liberty interest could be discerned, did not identify any allegedly inadequate California postconviction discovery procedure or requirement, and did not allege any facts indicating that a California postconviction discovery procedure or requirement was inadequate to vindicate a liberty interest. (Order at 7-8); *see Osborne*, 557 U.S. at 71; *Morrison*, 809 F.3d at 1064-71 (analyzing procedural due process challenge to Cal. Penal Code § 1405); *Alford v. Carlton*, 586 Fed. Appx. 438, 438 (9th Cir. 2014) (affirming dismissal of § 1983 complaint for failure to allege facts sufficient to state procedural due process claim for relief under *Osborne*); *Tarkington v. Smith*, 584 Fed. Appx. 736, 736-37 (9th Cir. 2014) (affirming dismissal and denial of leave to amend complaint); *Henderson v. DA Office*, 576

Fed. Appx. 666, 667 (9th Cir. 2014) (same). Moreover, to the extent Plaintiff relied on the California Public Records Act ("CPRA"), the Court noted the absence of any authority that the CPRA gives rise to a protectible liberty interest in postconviction discovery. *See Miramontes v. Zellerbach*, 2014 U.S. Dist. LEXIS 25183, *20-*21 (E.D. Cal. Jan. 8, 2014) (collecting cases).

In the FAC, Plaintiff challenges the procedures for obtaining access to physical evidence for purposes of postconviction DNA testing. Cal. Penal Code §§ 1054.9(c), 1405. Plaintiff makes two arguments.

## 1. Cal. Penal Code § 1405(g)(1)

Plaintiff challenges Cal. Penal Code § 1405(g)(1), which states that the court "shall grant the motion for DNA testing if it determines all of the following have been established: (1) The evidence to be tested is available and in a condition that would permit the DNA testing requested in the motion." This requirement violates due process, Plaintiff contends, because it demands something that "is not within the abilities of an incarcerated defendant." The state, not the prisoner, has access to the information that would establish "availability" and testable "condition." (FAC at 6-7, 10-14.)

Plaintiff's facial challenge to § 1405(g)(1) requires he show that no set of circumstances exists under which the Act would be valid. *Morrison*, 809 F.3d at 1068. Plaintiff fails to do so. The statute contains procedures for appointment of counsel for indigent prisoners who are eligible. An indigent prisoner may request appointment of counsel "to prepare a motion pursuant to subdivision (d) by sending a written request to the court. The request shall include the person's statement that he or she was not the perpetrator of the crime and shall explain how the DNA testing is relevant to his or her assertion of innocence. The request also shall include the person's statement as to whether he or she previously has had counsel appointed under this section." Cal. Penal Code § 1405(b)(1). If it finds that the prisoner is indigent, has included the required information and has

8

not had counsel previously appointed, "the court shall appoint counsel to investigate and, if appropriate, to file a motion for DNA testing under this section and to represent the person solely for the purpose of obtaining DNA testing under this section." *Id.* § 1405(b)(3)(A). If counsel has previously been appointed, the court "may, in its discretion, appoint counsel." *Id.* § 1405(b)(3)(B).

As Plaintiff concedes, the statute does not expressly require that the prisoner's motion make a showing as to the availability of the evidence and its condition for testing. Instead, as pertinent here, the prisoner's motion must "[m]ake every reasonable attempt to identify both the evidence that should be tested and the specific type of DNA testing sought" and "[r]eveal the results of any DNA or other biological testing that was conducted previously by either the prosecution or defense, if known." *Id.* § 1405(d)(1)(C), (E). Notice of the motion is served on the Attorney General, the district attorney "and, if known, the governmental agency or laboratory holding the evidence sought to be tested." *Id.* § 1405(d)(2). These entities may file responses. *Id.* If the court determines that the prisoner has met the requirements for filing a motion in § 1405(d)(1)(A)-(F), the court may order a hearing on the motion. *Id.* § 1405(f). "Either party, upon request, may request an additional 60 days to brief issues raised in subdivision (g)." *Id.*

Finally, upon request of the prisoner or his or her counsel, "the court may order the prosecutor to make all reasonable efforts to obtain, and police agencies and law enforcement laboratories to make all reasonable efforts to provide, the following documents that are in their possession or control, if the documents exist: . . . (2) Copies of evidence logs, chain of custody logs and reports, including, but not limited to, documentation of current location of biological evidence, and evidence destruction logs and reports. (3) If the evidence has been lost or destroyed, a custodian of record shall submit a report to the prosecutor and the convicted person or convicted person's counsel that sets forth the efforts that

9

were made in an attempt to locate the evidence. If the last known or documented location of the evidence prior to its loss or destruction was in an area controlled by a law enforcement agency, the report shall include the results of a physical search of this area. If there is a record of confirmation of destruction of the evidence, the report shall include a copy of the record of confirmation of destruction in lieu of the results of a physical search of the area." *Id.* § 1405(c)(3).

In *Morrison*, the Ninth Circuit rejected a facial challenge to Cal. Penal Code § 1405(g)(2),[2] which requires a finding that the "evidence to be tested has been subject to a chain of custody sufficient to establish it has not been substituted, tampered with, replaced, or altered in any material respect." *See also Osborne*, 557 U.S. at 64, 69 (rejecting due process challenge to Alaska's requirement that prisoner show evidence was available, newly discovered and diligently pursued). There are no allegations indicating that § 1405(g)(1) "offend[s] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, or transgress[es] any recognized principle of fundamental fairness in operation." *Id.* at 69 (internal quotations omitted).

## 2. Cal. Penal Code § 1405(c)

Because the FAC "does not seek an order that [Plaintiff] be allowed DNA testing, but instead seeks to invalidate the DNA testing statute on federal constitutional grounds, his claim is not barred by *Rooker-Feldman*." *Morrison*, 809 F.3d at 1070.

Plaintiff complains that the Superior Court denied his motion after finding that the exhibits entered into evidence at trial were destroyed and, based on the prosecution's evidence, that the sexual assault kit, stretch pants, piece of rope

---

[2] *Morrison* involved a prior version of the statute in which these requirements appeared in subsection (f) rather than (g). *Morrison* also rejected the argument of the prisoner in that case that the section 1405(g)(5) – then (f)(5) – violated due process by requiring the movant to establish a "reasonable probability" that the results of the DNA testing being sought would have improved the movant's verdict or sentence. 809 F.3d at 1068-69.

with red stain, and pair of red and white women's underwear had been destroyed. (Exh. B at 2-3 to FAC.) The court found that blood swatches from the victim and Petitioner were the only remaining forensic evidence, but those swatches were not part of the sexual assault kit according to the criminalist's trial testimony. (*Id.* at 3-4.)

Plaintiff alleges that his due process rights were violated because the statute does not require the court to order production of the items contained in § 1405(c)(1)-(3), and instead provides that the court "may" order the production of such materials. Plaintiff alleges that he and his counsel did not have the items in § 1405(c)(1)-(3).

Plaintiff has not shown that the court's discretion under § 1405(c) "'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgresses any recognized principle of fundamental fairness in operation.'" *Osborne*, 557 U.S. at 69 (citation omitted). The availability of discovery is generally within a court's discretion and does not violate due process. *E.g.,* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."); Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts ("A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."). A contrary rule would be impractical. *See Morrison*, 809 F.3d at 1070-71 (rejecting as applied challenge to review of § 1405 petition by a judge other than the trial judge).

Here, Plaintiff's motion under § 1405 asked that the following evidence be tested: sexual assault kit, white women's stretch pants, piece of rope with red stain and one pair of red and white women's underwear. (Exh. A at 1 to FAC.)

The Superior Court noted that Plaintiff had previously filed a motion for post-conviction discovery under Cal. Penal Code § 1054.9 and cited the hearing on

11

July 12, 2016. (Exh. B at 2 to FAC.) The Superior Court noted that, at that hearing, the prosecution stated that the sexual assault kit, white women's stretch pants, piece of rope with red stain, and pair of red and white women's underwear had been destroyed. (*Id.*) The court takes judicial notice of the transcript of the July 12, 2016 hearing, which was attached to Plaintiff's complaint in *Pryor I*. Plaintiff was represented by counsel, who had an investigator appointed. (Dkt. No. 1 at 28, *Pryor I*.)[3] As to the physical evidence, Plaintiff's counsel contacted the laboratory and the physical evidence was either destroyed or no longer there. (*Id.* at 34.) Plaintiff's counsel explained that "some items were entered into evidence" and "there was an order to destroy the evidence." "The evidence was evidently destroyed, like, three days early, but that was still many, many years ago." "So, the items either no longer exist in the Sheriff's Department or they have been destroyed under the evidence destruction order." (*Id.* at 34-35.) Plaintiff's counsel acknowledged that her client wanted an "acknowledgment of physical evidence location and dispositions," but she was unaware of such a form. "If what he's saying was I want to know where all these items are, we just represented where they are, but there is no such kind of form or procedure for doing that." (*Id.* at 35.) Specifically as to the sexual assault kit, both the prosecution and Plaintiff's counsel acknowledged it had been destroyed. (*Id.* at 36.) On Plaintiff's motion under § 1405, the Superior Court noted that after hearing argument and considering the papers, the court had found, by order dated September 28, 2016, that the exhibits entered into evidence at trial had been destroyed and that Plaintiff had been so informed. (Exh. B at 2-3 to FAC.)

Thus, the Superior Court previously appointed counsel and an investigator, who could (and apparently did) contact the laboratory directly and did not rely simply on the prosecution's representation. The court's sua sponte failure to

---

[3] Page citations are to the page numbers assigned by CM/ECF in the header.

order production of the items listed in § 1405(c)(1)-(3) cannot offend due process under these circumstances.

### 3. *Rooker-Feldman* Doctrine

Plaintiff adds an argument that the Superior Court erred in rejecting his argument that the only existing forensic evidence – blood swatches of the victim and Petitioner – were part of the sexual assault kit. The Superior Court relied on the criminalist's trial testimony as to the contents of the sexual assault kit.[4] (Exh. B at 3 to FAC.)

To the extent Plaintiff contends that the Superior Court erred in denying his motion, his claim is not cognizable pursuant to the *Rooker-Feldman* doctrine, as this court explained in *Pryor I. See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *see also Exxon Mobil Corp. v. Saudi Basic Industries, Inc.*, 544 U.S. 280, 284 (2005) (*Rooker-Feldman* doctrine applies to bar "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments").

The *Rooker-Feldman* doctrine "bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal [from a state court judgment], but also over the 'de facto equivalent' of such an appeal." *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012). To determine whether a claim constitutes a de facto appeal, a court examines whether "'the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" *Id.* at 779 (citation omitted). "Thus, we have found claims inextricably intertwined where '"the relief requested in the federal action would effectively reverse the state court decision or void its ruling."'" *Id.* (citation omitted).

---

[4] As Plaintiff notes, the blood swatches were tested at the time. He attaches the report as Exhibit D to the FAC.

To the extent Plaintiff argues that the Superior Court erred on the question of whether the blood swatches were or were not part of the sexual assault kits, Plaintiff's claim is barred by *Rooker-Feldman*. His claim would succeed only to the extent that the state court wrongly decided the issue before it and any relief would effectively reverse the state court's decision. *See Cooper*, 704 F.3d at 779.

## IV.

## <u>ORDER</u>

For the reasons discussed above, IT IS ORDERED that the First Amended Complaint is dismissed without leave to amend and that Judgment be entered accordingly. The Plaintiff has had an opportunity to cure the deficiencies in his complaint but has been unable to do so. Leave to amend would be futile.

DATED: 2/26/18

_____
DALE S. FISCHER
United States District Judge